# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

|  |  |
|---|---|
| **In Re:**<br><br>**Hoku Corporation,**<br><br>**Debtor.** | **Bankruptcy Case No. 13-40838-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

Joseph M. Meier, Cosho Humphrey, LLP, Boise, Idaho, Attorney for Scott Paul

James B. Smith and Jack S. Gjording, Gjording Fouser, PLLC, Boise, Idaho, Attorney for Tao (Mike) Zhang and Dayi (Sean) Liu

Kelly A. Cameron, Perkins Coie, LLP, Boise, Idaho, Attorney for Wei Xia

Steven L. Taggart, Maynes Taggart, PLLC, Idaho Falls, Idaho, Attorney for R. Sam Hopkins, Chapter 7 Trustee

MEMORANDUM OF DECISION – 1

*Introduction*

On January 16, 2014, Scott Paul, the former Chief Executive Officer

of chapter 7[1] debtor Hoku Corporation ("Debtor"), filed a motion

requesting that the Court determine that the proceeds of a certain

"Executive and Organization Liability Insurance Policy" (the "Policy")

owned by Debtor are not property of the bankruptcy estate or, in the

alternative, granting Paul relief from the automatic stay so that he can seek

payment of his defense litigation costs from the insurer as provided under

the Policy.  Dkt. No. 107 ("the Motion").  On February 5, 2014, chapter 7

trustee R. Sam Hopkins ("Trustee") filed an objection to the Motion.  Dkt.

No. 112.  On February 28, 2014, two other former directors and officers of

Debtor, Tao (Mike) Zhang and Dayi (Sean) Liu, filed a joinder in the

Motion seeking similar relief.  Dkt. No. 116.  On March 3, 2014, another

former director of Debtor, Wei Xia, also filed a joinder seeking the same

relief as in the Motion (collectively, Paul and the joining parties are

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all Rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 2

referred to as "the Movants").  Dkt. No. 119.

The Court conducted a preliminary hearing concerning the Motion on March 4, 2014, at which all counsel for the parties appeared an offered argument in support of their respective positions.  Dkt. No. 120.  At the conclusion of the hearing, the Court took the issues  under advisement noting that it would schedule a final evidentiary hearing if it deemed that to be necessary.

After a review of the record, it appears the material facts are not in dispute, and that no further hearing is required.  This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law, and disposes of the issues raised by the Motion.[2]

### *Facts*

As noted above, the relevant facts are not in dispute.

Debtor is a subsidiary of Tianwei New Energy Holdings, Co., Ltd. ("Tianwei").  On July 2, 2013, Debtor filed a chapter 7 bankruptcy petition.

---

[2] Rules 9014; 7052.

MEMORANDUM OF DECISION – 3

Dkt. No. 1.[3]   The Movants are former directors and executive officers of

Debtor.[4]  As far as the Court can determine, none of the Movants have

filed a proof of claim in Debtor's bankruptcy case.

On August 20, 2013, JH Kelly, LLC ("JH Kelly")—the primary

contractor selected by Debtor to build a polysilicon plant in Pocatello,

Idaho, and a major creditor in the bankruptcy case—sued Tianwei, along

with the Movants individually, in the U.S. District Court for the District of

Idaho, alleging that Tianwei and each of the Movants engaged in fraud,

racketeering, and other misconduct during the time JH Kelly was

constructing the plant, all of which caused JH Kelly to act to its detriment.

*See JH Kelly, LLC v. Tianwei New Energy Holdings, Co. Ltd., et al.*, 4:13-cv-

00368-BLW (D. Idaho) (the "JH Kelly Action").  In addition, in its

complaint, JH Kelly named several "Does" as defendants in the action

---

[3]  While they are not implicated in deciding the Motion in this case, two
other subsidiaries of Tianwei filed for chapter 7 relief on the same date.  *See In re
Hoku Materials, Inc.*, (13-40837-JDP) and *In re Hoku Solar, Inc.*, (13-40839-JDP).

[4]  Some or all of the Movants may have been directors and officers of the
related companies as well.

MEMORANDUM OF DECISION – 4

alleging that they are parties that may have participated in the wrongful

conduct, but who were unknown to JH Kelly at the time it filed the

complaint.[5]

Before filing the petition, Debtor had purchased the Policy,[6]

sometimes referred to as a "D & O  policy," which  among other things,

provides defense cost coverage to executives of Debtor.  Apparently, the

Policy has effective dates of August 19, 2011 through August 19, 2013, and

the aggregate limit of the insurer's liability, including defense costs,[7] is

---

[5] Trustee's counsel advised the Court at the hearing on the Motion that there may be up to three other directors and officers that could potentially be named as defendants in the action; at this point, JH Kelly has not sought to amend the complaint to add other directors and officers to the JH Kelly Action. In addition, on March 17, 2014, the District Court granted each served defendants' (Tianwei, Paul, Liu, and Zhang) motions to dismiss for failure to state a claim upon which relief may be granted, but the court provided JH Kelly twenty-one days to file an amended complaint if possible.  Dist. Ct. Dkt. No. 34.

[6] The Policy was issued in August 2011 by National Union Fire Insurance Company of Pittsburgh, PA, Policy Number 04-645-96-93.  Dkt. No. 107-1.

[7] Normally, the defense costs coverage under the Policy is subject to a "Retention" agreement that requires Debtor to indemnify its executives' defense costs up to a certain amount.  However, this provision of the Policy does not apply here due to the filing of Debtor's bankruptcy.  *See* The Policy, Dkt. No. 107-1 at 24 (stating "no retention applies for a Non-Indemnifiable Loss," which is defined to include a bankruptcy filing).

MEMORANDUM OF DECISION – 5

$10,000,000.  The relevant coverage provisions include the following:

### 1.  INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

### COVERAGE B:  ORGANIZATIONAL INSURANCE

(i) *Organization Liability*: This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an* **Insured Person**: This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured**

MEMORANDUM OF DECISION – 6

**Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

**COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE**

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

Dkt. No. 107-1 at 16 (bold, all caps, and italics in original).[8]

The Policy defines the bolded terms, above, in a definitions section.

*Id.* at 16-20.  In Clause 22, as amended by Endorsement 21, the Policy

provides an "Order of Payments."  *Id.* at 72.

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under

---

[8]  The Policy also provides a "Coverage D:  Crisisfund® Insurance," that is apparently not implicated in this dispute.  *Id.* at 16.  This coverage is mentioned in other provisions of the Policy discussed by the Court below.

MEMORANDUM OF DECISION – 7

Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, pay such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, pay such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

The bankruptcy or insolvency of any **Organization** or **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

*Id.* (bold in original).   As can be seen from these provisions, the liability

limits under the Policy render it what is frequently referred to as a

"wasting" policy, where payments made under the Policy reduce the total

amount of proceeds available to cover all other losses.

The Movants have each submitted a claim for coverage for their

respective defense costs related to the JH Kelly Action to the insurer as a

claim under the Policy.  Subject to a complete reservation of rights, the

MEMORANDUM OF DECISION – 8

insurer has agreed to advance the defense costs of these directors and

officers of Debtor for the JH Kelly Action, provided this Court grants the

relief requested by the Movants' motion.   In seeking the relief from the

Court, the Movants argue the proceeds of the policy are not property of

the Debtor's bankruptcy estate, and therefore, the automatic stay would

not impair the insurer's ability to pay them their defense costs claims.  Dkt.

Nos. 107 and 113.  In the alternative, the Movants argue the Court should

modify the automatic stay, if it determines the Policy proceeds are

property of the estate, and therefore subject to the automatic stay, because

they have shown good cause for that relief as required under § 362(d)(1).

*Id.*

        In objecting to the relief sought by the Movants, Trustee argues that

the proceeds are indeed property of Debtor's bankruptcy estate, and that

cause has not been shown to modify the automatic stay.  Trustee's primary

concern is the "net effect" of this Court allowing the Movants to access the

Policy proceeds to pay their defense costs will "diminish the bankruptcy

estate's potential recovery of its own claims under the Policy" to the

MEMORANDUM OF DECISION – 9

estate's detriment if Trustee seeks to recover from the Movants on his own

claims that he is still investigating.  Dkt. No. 112 at 4-5.  Finally, at the

hearing on the Movants' motion, Trustee argued a further evidentiary

hearing is required where the Movants would be required to show that

paying the defense costs out of their own pockets is a burden to them

financially.

*Analysis and Disposition*

## I.  Applicable Law

Section 362(a)(3) provides an automatic stay as of the date of the

petition that stays "any act to obtain possession of property of the estate or

of property from the estate or to exercise control over property of the

estate . . . ."  In this circuit, "a debtor's insurance policies are property of

the estate."  *Groshong v. Sapp (In re MILA, Inc.)*, 423 B.R. 537, 542 (9th Cir.

BAP 2010) (citing *The Minoco Grp. Cos., Ltd v. First State Agency of New*

*England Reinsurance Corp. (In re The Minoco Grp. Cos., Ltd.)*, 799 F.2d 517,

519 (9th Cir. 1986)); *In re Somerset, Inc.*, 13.3 IBCR 81, 82 (Bankr. D. Idaho

2013).  Whether the *proceed*s of a debtor's insurance policies are also

MEMORANDUM OF DECISION – 10

property of the estate is an unsettled question.  *In re MILA, Inc.*, 423 B.R. at

543; *see also Pintlar Corp. v. Fid. and Cas. Co. of New York (In re Pintlar Corp.)*,

124 F.3d 1310, 1314 (9th Cir. 1997).

Assuming, without deciding, the proceeds of the Policy are property

of the bankruptcy estate,[9] the Court concludes that good cause has been

established by the Movants under § 362(d) for relief the automatic stay.

"Section 362(d)(1) authorizes the bankruptcy court broad discretion

to grant relief from the automatic stay imposed under § 362(a) for 'cause.'"

*In re MILA, Inc.*, 423 B.R. at 542.  In cases involving D & O policy proceeds,

the bankruptcy court should balance the harm to the debtor if the stay is

modified with the harm to the directors and officers if they are prevented

---

[9]  The Court is aware of the decision of *In re Downey Fin. Corp.*, 428 B.R.
595 (Bankr. D. Del. 2010), in which the bankruptcy court, addressing a policy that
is nearly identical to the one at issue here, determined that the proceeds of such a
policy are not property of the estate when used to pay the defense costs of
directors and officers as provided for under the policy.  428 B.R. at 608.  The
court in that case, nevertheless, addressed whether relief from the automatic stay
was appropriate and concluded, in the alternative, that relief was warranted
because adequate cause had been shown under § 362(d).  *Id.*  Although that
court's analysis informs this Court's resolution of the issues here, the Court is not
bound by this decision.  Moreover, as will be seen, the Court has determined it
need not participate in the "policy vs. proceeds" debate to resolve the Motion.

MEMORANDUM OF DECISION – 11

from executing their rights to defense costs. *Id.* at 543-44 (citing *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004); *In re CyberMedica, Inc.*, 2280 B.R. 12, 18 (Bankr. D. Mass. 2002)).  When D & O policies are determined by a bankruptcy court to be property of the estate, "courts have nonetheless granted relief from [the] stay to allow the insurer to advance defense costs payments when the harms weigh more heavily against the directors or officers than the debtor." *In re MILA, Inc.*, 423 B.R. at 544 (citing *In re CyberMedica, Inc.*, 280 B.R. at 18).  In a "wasting" policy situation, courts factor whether defense costs might exhaust the coverage available to pay a future covered loss under the policy, or expose the bankruptcy estate to indemnification claims. *In re MILA, Inc.*, 423 B.R. at 544.  Further, "clear, immediate, and ongoing" losses to the directors and officers in incurring defense costs trumps only "hypothetical or speculative" claims by the trustee. *Id.* at 545.

## II.  Application of the Law to the Facts

In this case, the Court has balanced the potential harm to the bankruptcy estate of allowing the Movants to access the limited coverage

MEMORANDUM OF DECISION – 12

available under the Policy against that to the Movants of having to fund

their own defense to the JH Kelly Action.  In this respect, the Court finds

that the Movants are experiencing "clear, immediate, and ongoing"

defense costs expenses arising from the litigation in the District Court,

which costs are likely covered by the Policy.  Further, Coverage A is paid

first according to Clause 22, as modified by Endorsement 21, of the Policy,

and thus any claims under Coverage B, or beyond, would be subordinate

to the coverage requested by the Movants.

On the other hand, the potential for harm to the estate suggested by

Trustee consist of hypothetical, indeed perhaps speculative claims he

might pursue against the Movants, or some of them, such that he wants to

conserve the total coverage proceeds available under the Policy.  However,

it does not appear that the bankruptcy estate is currently exposed to any

other claims that would generate any claims against Coverage B, nor that

the bankruptcy estate would incur any indemnification claims by the

Movants.  Realistically, Trustee seems to be  merely be seeking to protect

the estate's claims against the Movants under Coverage A, a tactic that has

MEMORANDUM OF DECISION – 13

been criticized by other courts facing this issue.[10]

All things considered, the potential harm to the bankruptcy estate

inherent in granting the Movants relief is negligible, if any.  In addition,

Trustee's argument that each of the Movants ought to be required to show

that personally paying the defense costs is a burden, absent any

identifiable potential harm to the estate, is not persuasive.  Finally, the

Court notes the policy limit of liability is $10,000,000, a significant amount,

such that it is likely that the Movants' claims to the proceeds can be

satisfied with ample coverage remaining if needed by the bankruptcy

estate to address future claims.

In sum, the Court finds the Movants are incurring actual expense in

---

[10] *See, e.g., In re MILA, Inc.*, 423 B.R. at 544 n.6 ("At least two bankruptcy courts have chastised trustees for attempting to use their 'super powers' to prevent directors or officers from getting their bargained-for right to receive defense costs.  They recognize that the trustee's real concern is that defense costs payments may affect the trustee's right as a plaintiff seeking to recover from the D & O policy rather than, as trustees often claim, a potential defendant seeking protection." (citing *In re Allied Digital Techs. Corp.*, 306 B.R. at 512-13; *Miller v. McDonald (In re World Health Alternatives, Inc.)*, 369 B.R. 805, 811 (Bankr. D. Del 2007)).  In this case, Trustee is quite candid in conceding that it is the bankruptcy estate's claim against the Movants and the Policy he wishes to protect.

MEMORANDUM OF DECISION – 14

defending the JH Kelly Action, and that such is a clear, immediate, and actual harm that greatly outweighs any speculative and hypothetical harm to the bankruptcy estate.  Therefore, the Movants have shown cause for relief from the automatic stay under § 362(d)(1).

### Conclusion

For the foregoing reasons, the Court will grant the Movants' motion for relief from the automatic stay.  Counsel for Movants shall cooperate to jointly submit a single form of order consistent with this Memorandum for entry by the Court.   Counsel for Trustee, shall approve the form of order.

Dated:  March 25, 2014

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 15